# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY M. CRAWLEY, *as Personal Representative of the Estate of Gregory A. Buck, deceased*,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:25-cv-00388-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(ECF No. 16)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is the motion to dismiss for failure to state a claim filed by Defendants California Department of Corrections and Rehabilitation ("CDCR"); California Substance Abuse Treatment Facility and State Prison, Corcoran ("STAF-Corcoran"); State of California; and Bryan D. Phillips, in his individual capacity as Warden of California Substance Abuse Treatment Facility and State Prison, Corcoran (collectively, "Defendants"). On September 3, 2025, the Court held a hearing on the matter. Timothy I. Crawley, Esq., appeared on behalf of Plaintiff. Andrew Greene, Esq., appeared on behalf of Defendants. Having considered the moving papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendants' motion to dismiss.

/ / /

/ / /

# I.

# BACKGROUND

Plaintiff is Timothy M. Crawley, who brings this action as the personal representative of the estate of Gregory A. Buck (the "decedent"). (ECF No. 11, ¶¶ 3, 10.) Defendants are CDCR; SATF-Corcoran; State of California; and Bryan D. Phillips, in his individual and official capacities as Warden of California SATF-Corcoran. (Id. at ¶¶ 11-14.) In his capacity as Warden, Plaintiff alleges Defendant Phillips "[was] responsible for establishing, implementing, and enforcing policies related to inmate medical care, overdose prevention, emergency response, and supervision of individuals with known vulnerabilities, including substance use disorders." (Id. at ¶ 57.) Plaintiff has also included defendant Does 1-50, who represent "board members, directors, officers, correctional officers, medical personnel, supervisors, and other staff employed by Defendant CDCR who were responsible for facility policies regarding prisoner care and treatment." (Id. at ¶ 15.) In short, Plaintiff contends that Defendants, although knowing the risk, improperly failed to take reasonable measures to protect decedent while he was in Defendants' care and custody, ultimately leading to decedent's death caused by a drug overdose. (Id., ¶¶ 1, 2.) All of Plaintiff's causes of action are based on those basic facts.

Decedent "had a well-documented history of substance abuse and related mental health challenges" and "was incarcerated at the California Substance Abuse Treatment Facility and State Prison, Corcoran, a facility operated by Defendant CDCR," where he had previously been disciplined for possession of controlled substances and drug paraphernalia. (Id. at ¶¶ 18, 19, 33.) Decedent was housed alone. (Id. at ¶ 26.) On February 22, 2024, at approximately 7:35 a.m., certain Doe defendants "fail[ed] to summon emergency medical assistance in a timely manner." (Id. at ¶¶ 20, 21, 26.) An ambulance was not contacted until approximately 8:19 a.m., despite indications of a medical emergency. (Id. at ¶¶ 21, 26.) Thereafter, decedent was transported to Adventist Health Hanford, where he was pronounced dead. (Id. at ¶ 25.) Ultimately, decedent's cause of death was ruled to be from "toxic effects of fentanyl, morphine, and methamphetamine," and physical findings were consistent with a drug overdose. (Id. at ¶ 25.)

"Plaintiff is informed and believes that these D[oe] Defendants either were knowledgeable

1  of [decedent's] condition and failed to act, directly observed [decedent's] condition and failed to
2  act, were responsible for monitoring his cell and failed to conduct proper welfare checks or were
3  involved in emergency response protocols and failed to initiate appropriate procedures." (Id. at ¶
4  22.)  "Plaintiff is further informed and believes that one or more of the D[oe] Defendants were
5  responsible for contraband detection and control within [decedent's] housing unit, and that their
6  failure to make and/or enforce applicable drug screening or security procedures allowed narcotics
7  to be introduced or circulated within the facility, ultimately resulting in [decedent's] fatal
8  overdose." (Id. at ¶ 24.)  "Upon information and belief, Defendants failed to implement or enforce
9  adequate policies, procedures, and staffing protocols to detect, prevent, or respond to drug
10 trafficking, overdoses, or medical emergencies within the facility." (Id. at ¶ 27.)  "Defendants'
11 actions and omissions, individually and collectively, constituted deliberate indifference to
12 [decedent's] serious medical needs, a failure to protect him from foreseeable harm, and negligence
13 that directly and proximately caused his death." (Id. at ¶ 28.)

14      Plaintiff commenced this action on April 3, 2025.  (ECF No. 1.)  On June 3, 2025, Plaintiff
15 filed his amended complaint, bringing twelve causes of action: 1) deliberate indifference to a
16 serious medical need, brought through 42 U.S.C. § 1983; 2) wrongful death, Cal. Code Civ. Proc §
17 377.60; 3) survival action, Cal. Code Civ. Proc. § 377.30; 4) failure to protect from third parties,
18 brought through 42 U.S.C. § 1983; 5) failure to protect from self-harm, brought through 42 U.S.C.
19 § 1983; 6) cruel and unusual punishment, brought through 42 U.S.C. § 1983; 7) common-law
20 negligence; 8) negligent hiring, training, supervision, and retention; 9) negligent formation and
21 promulgation of policies and procedures; 10) intentional infliction of emotional distress; 11)
22 violations of the Bane Act, Cal. Civ. Code § 52.1; and 12) violations of the Ralph Act, Cal. Civ.
23 Code § 51.7.  (ECF No. 11, pp. 8-30.)  On July 9, 2025, Defendants filed the instant motion to
24 dismiss. (ECF No. 16.)  The assigned District Judge referred the motion to the undersigned for the
25 preparation of findings and recommendations.  (ECF No. 21.)  The motion was fully briefed (ECF
26 Nos. 23, 25), and the Court heard argument on September 3, 2025.  (ECF No. 26.)
27 / / /
28 / / /

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732, citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

///

## III.

## DISCUSSION

The Court addresses the parties' arguments in the following order: A) conceded dismissals; B) claims brought through 42 U.S.C. § 1983; C) the California Government Claims Act claim; D) punitive damages; and E) leave to amend.

### A. Conceded Dismissals

Notwithstanding meet and confer opportunities (ECF No. 17), Plaintiff now concedes in his opposition, and at the hearing, that the claims against Defendants CDCR and the State of California must be dismissed pursuant to Eleventh Amendment immunity. (ECF No. 23, pp. 4-5.) The Court agrees and will recommend that the claims against CDCR and the State of California be dismissed without prejudice and that these Defendants be terminated from this action.

Based on these concessions, the only remaining named Defendant is Bryan D. Phillips.

### B. Claims Brought Through 42 U.S.C. § 1983

Defendants essentially argue that Plaintiff has failed to state a claim of deliberate indifference to serious medical needs and failure to protect (from third parties and self-harm). (ECF No. 16-1, pp. 8-9.) Defendants also separately attack Plaintiff's failure to supervise claim against Phillips. (Id. at pp. 9-10.) Plaintiff opposes, first clarifying that Phillips is sued in his individual capacity for deliberate indifference and not merely as a supervisor. (ECF No. 23, pp. 5-6.) Plaintiff continues, arguing that his allegations and claims involving the Doe defendants are proper. (Id. at pp. 7-8.) Even construing the allegations in the amended complaint in the light most favorable to Plaintiff, the Court nonetheless agrees with Defendants.

#### 1. Relevant Allegations

In his opposition, Plaintiff has identified the following allegations as supporting that the amended complaint adequately alleges deliberate indifference, as well as supervisory liability based on a policy, as to Defendant Phillips. Plaintiff alleges that "[Phillips] was responsible for the oversight, management, and administration of Defendant CDCR's SATF-Corcoran location, including the implementation and enforcement of policies, procedures, and training of staff," including on "inmate supervision, medical care, and overdose prevention." (ECF No. 11, ¶¶ 14,

48.) In both his official and individual "capacities," Plaintiff alleges that "Phillips was responsible for setting policies around prisoner care and treatment, especially with regard to care and treatment of prisoners with addiction and substance abuse issues as suggested by the name of the facility." (Id.) Phillips "was also responsible for setting policies and enforcement around prevention of drug and illegal substance infiltration into the facility to prevent harm to those in his custody." (Id.) "Upon information and belief, [Phillips] failed to implement or enforce adequate policies, procedures, and staffing protocols to detect, prevent, or respond to drug trafficking, overdoses, or medical emergencies within the facility." (Id. at ¶ 27; see id. at ¶ 48.) Moreover, "Phillips . . . failed to ensure that custody and medical staff were adequately trained and prepared to detect and respond to signs of overdose and medical crisis." (Id. at ¶ 35; see id. at ¶ 92.) This included "policies necessary to monitor and protect vulnerable inmates . . ., creating a substantial risk of serious harm that they consciously disregarded." (Id. at ¶ 35; see id. at ¶ 92.) According to Plaintiff, Phillips was "aware of the substantial and ongoing risk posed by contraband within the prison and of [decedent's] specific medical vulnerability to such risk." (Id. at ¶ 74.) These wrongful acts by Philips, and Doe defendants, were the direct and proximate cause of decedent's fatal overdose. (Id. at ¶ 50.)

For Doe defendants, Plaintiff directs the Court to allegations that "DOES were personally responsible for implementing, supervising, and enforcing policies governing inmate medical care, mental health monitoring, and emergency response procedures, including those addressing individuals with substance use disorders." (Id. at ¶ 34; see id. at ¶ 136.) Further, "Defendants knew or reasonably should have known of [decedent's] heightened risk for overdose and were under a duty to ensure his care, supervision, and safety while in custody." (Id. at ¶ 45.) "Plaintiff is informed and believes that Defendants DOES 1 through 50, including custody, medical, and supervisory staff, failed to monitor [decedent] adequately, ignored warning signs, and delayed life-saving medical intervention. Despite discovering [decedent] unresponsive at approximately 7:35 a.m., emergency medical services were not summoned until 8:19 a.m., resulting in a deadly delay in care." (Id. at ¶ 94; see id. at ¶¶ 36, 46.) Later in the amended complaint, Plaintiff notes that "[d]rug paraphernalia was observed, including a spoon with suspected narcotics residue and a

1  makeshift syringe. Despite these clear indicators of a medical emergency, the DOE Defendants
2  failed to initiate an adequate emergency response." (Id. at ¶ 60.) Plaintiff also alleges that
3  "Defendants either observed [decedent] in distress or were aware or should have been aware of his
4  condition through their custodial responsibilities but failed to summon an ambulance until
5  approximately 8:19 a.m." (Id. at ¶ 84.)

6          2.      Deliberate Indifference to Serious Medical Need

7  While the Eighth Amendment of the United States Constitution entitles an inmate to
8  medical care, the Amendment is violated only when a prison official subjectively acts with
9  deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978,
10 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83
11 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Under the subjective
12 deliberate indifference standard, "a prison official will be liable for disregarding an inmate's
13 serious medical needs only if he was both 'aware of facts from which the inference could be drawn
14 that a substantial risk of serious harm exists' and actually 'dr[e]w the inference.' Sandoval v.
15 Cnty. of San Diego, 985 F.3d 657, 667-68 (9th Cir. 2021), quoting Peralta, 744 F.3d at 1086. In
16 contrast, "a prison official who 'should have been aware' of a medically related risk to an inmate,
17 but in fact was not, 'has not violated the Eighth Amendment, no matter how severe the risk.'" Id.
18 at 668, quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002), overruled on
19 other grounds, Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir 2016). Mere negligence is
20 insufficient for Eighth Amendment liability. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

21 "A medical need is serious if failure to treat it will result in significant injury or the
22 unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citation and internal
23 quotation marks omitted). "Indications that a plaintiff has a serious medical need include [t]he
24 existence of an injury that a reasonable doctor or patient would find important and worthy of
25 comment or treatment; the presence of a medical condition that significantly affects an individual's
26 daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d
27 1060, 1066 (9th Cir. 2014) (citation and internal quotation omitted).

28 To begin, the Court observes that there are no allegations regarding Defendant Phillips'

1 individual actions and deliberate indifference to a serious medical need. The only underlying
2 allegations in connection to Phillips are related to policies. Because Plaintiff has not plausibly
3 alleged that Phillips was aware of facts from which the inference could be drawn that a substantial
4 risk of serious harm existed and actually drew such an inference, Plaintiff's deliberate indifference
5 to a serious medical need against Phillips necessarily fails to state a claim.

6       For substantially similar reasons, Plaintiff has also not stated a claim against any Doe
7 defendants. The Ninth Circuit disfavors the use of Doe defendants. Gillespie v. Civiletti, 629 F.2d
8 637, 642 (9th Cir. 1980); see Fed. R. Civ. P. 10(a). However, Doe defendants may be necessary
9 where the plaintiff states a valid claim but needs discovery to identify the proper defendant.
10 Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). While "the use of Doe defendants
11 is acceptable to withstand dismissal of a complaint at the initial review stage," the burden is on
12 plaintiff to discover the full name of each Doe defendant and "provide that information to the court
13 in an amendment to his complaint that explains what each person did or failed to do that caused a
14 violation of his constitutional rights." Garcia v. City of Santa Clara, No. C 10–2424 SI (pr), 2010
15 WL 3447666, at *1 (N.D. Cal. 2010).

16       Here, Plaintiff has generally alleged that Doe defendants 1-50 included custody, medical,
17 and supervisory staff, as well as board members, directors, officers, correctional officers,
18 medical personnel, supervisors, and other staff employed by Defendant CDCR. The only
19 relevant fact from the amended complaint regarding this claim is that decedent was discovered at
20 7:35 a.m., and emergency medical services were not summoned until 8:19 a.m. Dispositive here,
21 however, is that Plaintiff has not alleged that anyone was in fact was aware of facts from which
22 the inference could be drawn that a substantial risk of serious harm existed and actually drew
23 such an inference. Plaintiff's protests otherwise merely rely upon conclusory allegations and
24 conclusions of law, essentially tracing the elements of the claim. As the Court discussed at the
25 hearing, it is not uncommon in this area of the law for plaintiffs to allege Doe defendants;
26 however, they are usually identifiable enough such that would not be unfair to require an
27 opposing party to be subjected to the expense of discovery and continued litigation. Finally, the
28 Court notes that throughout the amended complaint, Plaintiff uses language that Defendants

8

knew or should have known, (ECF No. 11, ¶¶ 19, 45, 69, 72, 84, 102, 156), which on its face is insufficient to state a claim for deliberate indifference.

For all these reasons, the Court will recommend dismissing Plaintiff's claim of deliberate indifference to a serious medical need.

### 3. Failure to Protect

"The Eighth Amendment requires prison officials to protect inmates from violence." Wilk v. Neven, 956 F.3d 1143, 1147 (9th Cir. 2020), citing Farmer, 511 U.S. at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Specifically, "a prison official violates an inmate's Eighth Amendment right only if that official is 'deliberately indifferent'—in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably." Wilk, 956 F.3d at 1147, quoting Farmer, 511 U.S. at 837, 844-45. Once an official is subjectively aware of a substantial risk of serious harm, the law requires "only that the [official] take reasonable measures to mitigate the substantial risk." Id. (quoting Castro, 833 F.3d at 1067).

As with the claim for deliberate indifference to a serious medical need, Plaintiff's only allegations centering on Phillips are in relation to policies. In other words, Plaintiff has not alleged that Phillips personally was aware of a substantial risk of serious harm to an inmate (whether by third parties or by decedent himself) and personally disregarded that risk by failing to respond adequately. Plaintiff seemingly relies on the following logic chain that Phillips must have personally known of decedent's substance abuse history because he was being housed in SATF-Corcoran—and because decedent overdosed while in custody, Phillips must have been deliberately indifferent by failing to protect decedent. The Court finds this to be a bridge too far because it relies on assumptions and conclusions that stretch beyond even the reasonable inferences afforded to Plaintiff, the non-moving party, on a motion to dismiss. Plaintiff's failure to protect claim fails against Defendant Phillips.

Furthermore, this claim is even more tenuous with regard to Doe defendants. There are no allegations regarding who was in charge of supervising decedent (or if supervision was even

required), what any one person knew of was a substantial risk of serious harm, and how any one person actually disregarded that risk by failing to respond adequately. There are no allegations that anyone was required to monitor decedent for drug use or aberrant behavior and failed to do so. These are of course examples. Again, the general claims involving Doe defendants 1-50 are not enough to support a claim of deliberate indifference by failing to protect, either from decedent himself or from third parties.

The Court will recommend dismissing Plaintiff's deliberate indifference, failure to protect claims.

        4.        Supervisory Liability.

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205-06; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Corales, 567 F.3d at 570 (internal quotation omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208, quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy 'itself is a repudiation of the constitutional rights' and is 'the moving force of the constitutional violation.'" Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013), quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

Here, the Court analyzes Phillips and the Doe defendants together. As discussed at the hearing, the Court is unable to discern from the allegations in the amended complaint what policy

1  (or lack thereof) is at issue in this case.  To be sure, Plaintiff states throughout that Phillips and
2  Doe defendants are in charge of policies related to inmate welfare, drug prevention and response,
3  medical care, mental health monitoring, supervision, housing, and emergency response protocols.
4  Yet, Plaintiff has not given any allegations supporting what the exact policy or policies at issue
5  were and how they were a repudiation of a constitutional right, as well as the moving force of the
6  constitutional violation.  At the hearing, Plaintiff mentioned inadequate staffing.  Yet, it is not
7  enough to allege that there were policies regarding staffing in place at a prison; Plaintiff must
8  allege a policy that was a repudiation of a constitutional right, and *that specific policy* (not policies
9  generally) also was the moving force of the constitutional violation.

In addition, as with the claims above, Plaintiff has not included allegations any one official set in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms.

For the forgoing reasons, the Court will recommend dismissing Plaintiff's sixth cause of action.[1]

### C.    California Government Claims Act Claim

Defendants argue that Plaintiff state law claims should be dismissed because Plaintiff did not fully comply with the Government Claims Act.  (ECF No. 16-1, pp. 6-8.)  Specifically, Defendants assert that Plaintiff's government claim did not provide "the degree of specificity that is required," as well as failing to identify Defendant Phillips.  (Id. at p. 7.)  Plaintiff opposes, arguing that the government claim form included sufficient details, naming of exact defendants is not necessarily required, and Plaintiff's limited knowledge excuses the lack of factual detail.  (ECF No. 23, pp. 11-14.)  Under the circumstances, the Court is not persuaded by Plaintiff's arguments.

Under California law, "presentation of a claim to a public entity and its rejection are prerequisites to maintaining suit against the entity."  Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr., 8 Cal. App. 4th 729, 732 (Cal. Ct. App. 1992), citing Cal. Gov. Code, §§ 905, 945.4.

---

[1] The Court notes that Plaintiff's sixth cause of action is a standalone violation of the Eighth Amendment, Curel and Unusual Punishment claim; however, upon review, the claim appears to be a catchall, covering failure to protect, deficient policies, training, and failure to provide for a serious medical need.  Without duplicating its efforts, the Court addresses only the other claims it has not already analyzed for this cause of action.

1  "The failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect." Miller v. United Airlines, Inc., 174 Cal. App. 3d 878, 890 (Cal. Ct. App. 1985).  As relevant here, presentation of a claim requires including "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known." Cal. Gov. Code § 910(e).  "It is not the purpose of the [California] claims statutes to prevent surprise." City of San Jose v. Super. Ct., 12 Cal. 3d 447, 455 (Cal. 1974).  Instead, "the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." Id.  "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." Id.

That said, the California Supreme Court has clarified that "a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 446, 99 P.3d 500 (Cal. 2004), quoting Shoemaker v. Myers, 2 Cal.App.4th 1407, 1426, 4 Cal. Rptr. 2d 203 (Cal. Ct. App. 1992).  "As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statute should not be applied to snare the unwary where its purpose has been satisfied." Id. (internal quotations and citations omitted).

In the timely filed government claim form, the claimant is listed as "The Estate of Gregory A. Buck," and the agency the claim was filed against is CDCR.  (ECF No. 11, p. 32.)  The form indicates that the date of the incident was February 22, 2024, and the incident occurred at "California Substance Abuse Treatment Facility and State Prison, Corcoran." (Id.)  The specific damage or injury listed is "wrongful death," with the circumstances that led to the death stated as "under investigation." (Id.)  In explaining why the Estate believed CDCR was responsible for the damage or injury, the form states: "This is a wrongful death involving Mr. Gregory A. Buck while he was an inmate at the California Substance Abuse Treatment Facility and State Prison caused by the negligence of the State allowing banned substances in a controlled environment." (Id.)

As stated above, the relevant statutory provision explicitly requires "[t]he name or names

of the public employee or employees causing the injury, damage, or loss, if known." Cal. Gov. Code § 910(e). Yet, "a cause of action against a public employee is barred if the claim submitted did not name the public employee in the claim for damages." Young v. City of Menifee, No. EDCV 17-1630 (JGB) (SPx), 2023 WL 11053618, at *18 (C.D. Cal. Sept. 14, 2023), citing Cal. Gov. Code § 950.2. Because the California statutes on this matter are complex and self-referencing, the Court quotes the relevant statutes:

> Except as provided in Section 950.4, a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of this division or under Chapter 2 (commencing with Section 945) of Part 4 of this division. This section is applicable even though the public entity is immune from liability for the injury.

Cal. Gov. Code § 950.2.

That said, while a cause of action against a public employee is barred if the claim submitted did not name the public employee in the claim for damages, "[a] cause of action against a public employee or former public employee is not barred by Section 950.2 if the plaintiff pleads and proves that he did not know or have reason to know, within the period for the presentation of a claim to the employing public entity as a condition to maintaining an action for such injury against the employing public entity, . . . that the injury was caused by an act or omission of the public entity or by an act or omission of an employee of the public entity in the scope of his employment as a public employee." Cal. Gov. Code § 950.4. In other words, a plaintiff may maintain a cause of action in court against a public employee whose identity he did not know "provided []he can plead and prove . . . [that] []he did not know or have reason to know the identities of the public employees who caused h[is] injury and damages. Necessarily, of course, []he must also plead the names of all the public employees whose acts or omissions caused h[im] injuries and damages." Williams v. Braslow, 179 Cal. App. 3d 762, 773 (Cal. Ct. App. 1986).

As presently pleaded, Plaintiff has not alleged that he did not know or have reason to know, within the statutory timeframe, the identities of the public employees who caused his injury and damages. Plaintiff argues that by listing CDCR and STAF-Corcoran, it should have been apparent

13

1 that a claim would necessarily involve the Warden. But the "claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." City of San Jose, 12 Cal. 3d at 455. Therefore, this argument is unconvincing.

Plaintiff's offered precedent is also unpersuasive. In Stockett, the question before the California Supreme Court was whether a cause of action could be maintained in court where the plaintiff had listed wrongful termination in the government claims form but then later also raised theories of illegal motivation that had not been specified in the form. 34 Cal. 4th at 443. In discussing the requirements of detail in a claim form and then what a claimant could later raise in a court action, the Court reiterated that "a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" Id. at 446. The Court then observed that "the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions," and therefore, "the claims statute should not be applied to snare the unwary where its purpose has been satisfied." Id. (internal quotations and citations omitted).

As should be apparent, the California Supreme Court was focused on what constitutes sufficient information in a government claims form to allow for a public entity to enable it to investigate and settle claims. The Court clarified that "[t]he claim . . . need not specify each particular act or omission later proven to have caused the injury." Id. at 447 (internal quotation omitted). Thus, a later filed complaint's "full exposition of the factual basis beyond that given in the claim is not fatal," so long as there has not been a "complete shift of allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim." Id. (internal quotations omitted). In other words, "[w]here the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint." Id. (internal quotation omitted). While Stockett addressed how courts are to evaluate whether a claim was properly presented before brought to court, it does not squarely address the issue of the separate requirement of listing individual employees, if known. This is only underscored by the fact that in Stockett, the plaintiff

1 had stated in his government claim form "the date and place of his termination, *named those [state*
2 *agency] officers and agents he believed responsible*, and generally stated the 'circumstances' . . .
3 of his termination. In addition, he stated the termination had been wrongful because it was
4 effected in violation of California public policy." Id. at 447 (emphasis added). Therefore, the
5 Court does not find Stockett persuasive here.

6     Plaintiff's other precedent, Cooks v. State of California Department of Corrections and
7 Rehabilitation, is further afield. No. 2:20-cv-1780 KJN P, 2022 WL 2110761 (E.D. Cal. June 10,
8 2022), F&R adopted, No. 2:20-cv-01780-DAD-KJN (PC), 2022 WL 4096654, (E.D. Cal. Sept. 7,
9 2022). In Cooks, the magistrate judge declined to reach the issue of compliance with the
10 government claims act, finding it more suitable to be disposed of on summary judgment. Id. at *2
11 n.1. Ultimately, the magistrate judge recommended dismissing all claims with prejudice except
12 the plaintiff's general negligence/medical malpractice claim, which the court recommended
13 dismissing with leave to amend. Id. at *2-*6. The district judge adopted this recommendation.
14 2022 WL 4096654. Thus, the final disposition of Cooks was that the complaint was dismissed
15 with partial leave to amend. Therefore, Plaintiff's suggestion that "[t]he court in Cooks went on to
16 hold that claims against individuals could proceed where their roles were not yet fully known at
17 the time of the claim, and it expressly allowed amendment based on evidence gathered later
18 through discovery," is not exact. (ECF No. 23, p. 12.) In truth, the Cooks court allowed leave to
19 amend "in an abundance of caution . . . should [the] plaintiff be able to *allege facts or adduce*
20 *evidence against a specific CDCR employee* that would meet the narrow exception under
21 California Government Code § 845.6, as discussed above." Id. at * 6 (emphasis added).
22 Therefore, this case too is not persuasive.

23     Plaintiff has not pleaded that he did not know or have reason to know of the identity of
24 Defendant Phillips before the deadline to file his government claims act form. Therefore, at this
25 time, the Court finds that Plaintiff's state-law claims against Phillips may not proceed because they
26 are barred by the government claims act. For sustainably similar reasons, the Court also finds this
27 to be true regarding the Doe defendants. In light of these findings, the Court finds it unnecessary
28 at this time to continue with the remaining arguments regarding whether Plaintiff states state-law

claims against Defendant Phillips or the Doe defendants because any further analysis would essentially be an advisory opinion.

In light of the foregoing, the Court will recommend that all of Plaintiff's state-law claims be dismissed as to Defendant Phillips and Doe defendants.[2]

**D.    Punitive Damages**

Given that the Court is recommending dismissal of all claims against all Defendants, the Court finds it improvident to address the issue of whether punitive damages are available. As both parties are aware, such a determination here will be fact specific. Smith v. Wade, 461 U.S. 30, 56 (1983); Cal. Civ. Code § 3294(a).

**E.    Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

Leave to amend should be granted in its entirety. The Court does not find there is an indication that Plaintiff has engaged in undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, nor would there be futility of amendment or undue prejudice to Defendants. That said, the Court will recommend granting leave to amend with the understanding that Plaintiff will do so only to the extent he believes in good faith that he can plead additional factual

---

[2] At this early stage of the proceedings, the Court declines to entertain Defendants' arguments regarding qualified immunity for federal claims and specific immunity for state-law claims.

material that could satisfy the legal standards and deficiencies identified herein. See Fed. R. Civ. P. 15(a)(2); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss (ECF No. 16) be GRANTED as follows:

1. The motion to dismiss as to dismissing the claims against CDCR and the State of California be GRANTED, without prejudice, pursuant to Eleventh Amendment immunity;

2. The motion to dismiss as to dismissing Plaintiff's claims brought through 42 U.S.C. § 1983 be GRANTED for failure to state a claim with leave to amend; and

3. The motion to dismiss as to dismissing Plaintiff's state-law claims as barred by the Government Claims Act be GRANTED with leave to amend;

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 10, 2025**

STANLEY A. BOONE
United States Magistrate Judge

17